**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**VICKIE FORBY, individually and on
behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**ONE TECHNOLOGIES, LP, ONE
TECHNOLOGIES MANAGEMENT LLC, and
ONE TECHNOLOGIES CAPITAL LLP,**

**Defendants.**                    **Case No. 15-0757-DRH-PMF**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

**I.    Introduction**

Pending before the Court is defendants' One Technologies, LP, One Technologies Management LLC, and One Technologies Capital LLP (hereinafter "One Technologies") Motion to Dismiss or Transfer the above-captioned case (Doc. 9). In its Memorandum in support of the Motion, which was filed on July 21, 2015, One Technologies contends that the plaintiff Vickie Forby's claims are governed by a contract between the parties that selects arbitration in Dallas, Texas as the agreed upon method of dispute resolution (Doc. 10, p.1). One Technologies therefore seeks to have this Court either dismiss the case under the doctrine of *forum non conveniens* or transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404. (Doc. 10 p.1). Alternatively, One Technologies

contends that, if this Court retains jurisdiction over this matter, then Forby's Complaint fails to state a cognizable claim and thus seeks dismissal with prejudice pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). (Doc. 10 p.1). Forby filed a Response in Opposition on September 18, 2015. (Doc. 24). One Technologies sought leave to file a Reply Brief (Doc. 26), which this Court granted. For the reasons discussed below, One Technologies' Motion is **GRANTED** as to the request to transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The requests to dismiss the case pursuant to the doctrine of *forum non conveniens* or Rule 12(b)(6) are therefore **DENIED AS MOOT**.

## II.    Background

Vickie Forby initially filed her Complaint in the Circuit Court of St. Clair County, Illinois, on April 24, 2015 (Doc. 1 Ex. B). In her Complaint, Forby alleges that One Technologies violated the Illinois Consumer Fraud Act through "deceptive, unfair, and misleading marketing and advertising tactics" and thereby has been unjustly enriched (*Id.* at ¶ 1). Specifically, Forby alleges that One Technologies offered consumers "free" online access to their credit scores, then enrolled those consumers in a credit monitoring program that costs $29.95 per month until the consumer calls One Technologies to cancel her membership.[1] (*Id.*). Forby seeks damages for

---

[1] This type of membership is commonly known as negative option billing. *See* FTC Staff Report, "Negative Options" (January 2009), *available at* http://www.ftc.gov/os/2009/02/P064202negativeoptionreport.pdf.

herself and on behalf of a proposed class of all other similarly situated persons (*Id.* at ¶ 36).

One Technologies filed to remove the case to this Court on July 14, 2015, pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1441(a) (Doc. 1). One Technologies then filed the pending Motion to Dismiss or Transfer (Doc. 9). One Technologies contends that this Court must dismiss or transfer this case because the parties have agreed that "any arbitration, suit, action, or other legal proceeding…must be brought in Dallas, Texas."[2] (Doc. 10 p.2 & Ex. B ¶ 22). This agreement is contained in One Technologies' Terms and Conditions, which are available to prospective consumers "through an underlined blue hyperlink that appears on each of a series of five enrollment webpages" that consumers must navigate through in order to obtain their credit scores and/or the other services offered by One Technologies (Doc. 10 p.1). Moreover, on the third of the five enrollment webpages (referred to by One Technologies as the "Step 2 Webpage"), directly above the "Continue" button that a prospective consumer must click in order to proceed with the enrollment process, is the following statement:

> By clicking on the "Continue" button below, you agree to the <u>Offer Details</u>, to the <u>Terms and Conditions</u>, acknowledge receipt of our

---

[2] The Terms and Conditions agreement also contains an arbitration clause that, in all caps, provides that "all claims, disputes or controversies . . . shall be resolved by final and binding arbitration that will be held in Dallas, Texas, pursuant to the rules of the American Arbitration Association." (Doc. 10 Ex. B ¶ 23). The arbitration clause also precludes the possibility of class arbitration. (*Id.*).

Privacy Policy and agree to its terms, and confirm your authorization for ScoreSense® to obtain your credit profile from any consumer reporting agency for your own use, to confirm your identity to avoid fraudulent transactions in your name, and to monitor your credit for changes.

(Doc. 10 p.3 & Ex. A). The underlined portions of the above statement purportedly hyperlinks to the webpages containing the Offer Details, Terms and Conditions, and Privacy Policy, respectively.[3] (Doc. 10 p.9). The Step 2 Webpage is reproduced below:



---

[3] Although the other hyperlinks to the Terms and Conditions on One Technologies' webpages are in blue, the underlined "Terms and Conditions" in this statement is in the same black font as the surrounding text. (Doc. 10 Ex. A).

One Technologies argues that its Terms and Conditions constitute a valid contract that Forby accepted via the enrollment process, primarily by clicking the "Continue" button on the Step 2 Webpage "after the repeated and conspicuous disclosure" of the contract. (Doc. 10 pp.9–10). As such, One Technologies contends that the parties' choice of forum and dispute resolution method should govern.

Forby, however, argues that she never agreed to the Terms and Conditions and therefore there is no valid forum-selection or arbitration clause governing this dispute (Doc. 24 p.4). Forby asserts that she did not have actual knowledge of the Terms and Conditions and that One Technologies did not present the terms "in a reasonable manner designed to ensure that the offeree was aware of the terms and conditions of the contract into which she was entering." (Doc. 24 p.9). She contends that One Technologies buried the hyperlink to the terms "in a small text paragraph displayed immediately above a large 'Continue' button, with no warning to the consumer that the Terms and Conditions are materially significant." (Doc. 24. pp.11–12).

Forby additionally argues that, even if this Court were to find that she had sufficient notice of the Terms and Conditions, the forum-selection and arbitration clauses are fundamentally unfair and therefore should not be enforced (Doc. 24 p.13). Forby claims that it would be unfair to force "consumers, who conduct transactions in their own homes, to travel

hundreds, or even thousands of miles to vindicate their rights." (Doc. 24 p.14). Moreover, Forby argues it is unfair to limit class arbitration. (*Id.*). Therefore, Forby requests that this Court deny One Technologies' motion to transfer or dismiss this case. (Doc. 24 p.1).[4]

### III.    <u>Legal Standard</u>

The statute governing transfer of cases in the federal court system is 28 U.S.C. § 1404. That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Supreme Court has held that 1404(a) "provides a mechanism for enforcement of [valid] forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013). When the forum-selection clause "point[s] to a state or foreign forum," the appropriate way to enforce such a clause is "through the doctrine of *forum non conveniens*." *Id.* at 580. "[C]ourts should evaluate a forum-selection

---

[4] One Technologies and Forby also brief the issue of dismissal pursuant to Rule 12(b)(6) for failure to state a claim, in the event that this Court retained jurisdiction over this matter, arguing that One Technologies' conduct is or is not deceptive as a matter of law. Because this Court is transferring the case to the Northern District of Texas and denying the motion to dismiss as moot, the Court shall not address this issue.

clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.*[5]

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 134 S. Ct. at 581. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* When a valid forum-selection clause exists, the analysis under 1404(a) changes in three ways: (1) "the plaintiff's choice of forum merits no weight;" (2) the court "should not consider arguments about the parties' private interests;" and (3) the transfer "will not carry with it the original venue's choice-of-law rules." *Id.* at 581–83.

Therefore, the court must first determine whether a valid forum-selection clause exits. The validity of a forum-selection clause should be analyzed according to ordinary contract law principles. *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990) (holding that forum-selection clauses "should be treated like any other contract" except that third party effects should be considered). A forum-selection clause is invalid if no agreement was made, or if the agreement was obtained through fraud or overreaching. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006). Second, if the court finds that a valid forum-

---

[5] The Supreme Court has held that district courts "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 1192, 167 L. Ed. 2d 15 (2007).

selection clause exists, it must enforce the parties' contracted-for choice of forum unless, in the "most unusual" case, "public-interest factors" are sufficient to override the parties' choice. *Atl. Marine*, 134 S. Ct. at 582–83; *see also Chukwu v. Air France*, 218 F. Supp. 2d 979, 989 (N.D. Ill. 2002) (listing public interest factors as including "1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; 2) the court's familiarity with applicable law; and 3) the congestion of the respective court dockets and the prospects for an earlier trial").

### IV.    <u>Analysis</u>

#### 1. *Choice of Law.*

There is a threshold question regarding what law applies to the validity of the forum-selection clause at issue here. There are three bodies of law potentially applicable: federal law, Illinois law, and Texas law (the law chosen by the Terms and Conditions). The Seventh Circuit, unlike the majority of federal circuits, normally applies the law chosen by the parties in the agreement in determining the validity of a forum-selection clause. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014). But where, as here, the validity of the choice of law clause itself is disputed,[6] the Seventh Circuit has left open the question as to what law applies. *Id.* at 775 n.23 ("We need not decide the question of what law governs the validity and

---

[6] Forby argues that she did not agree to any of One Technologies' Terms and Conditions; this would include the choice of law clause. (Doc. 24 p.1).

interpretation of the loan agreements, however, because whether federal, tribal, or Illinois law applies, the same result obtains."). Here, the Court finds that whether federal, Illinois, or Texas law applies, the standard is the same. *Muzumdar v. Wellness Int'l Network, Ltd*., 438 F.3d 759, 761 (7th Cir. 2006) ("[U]nder either federal or Illinois law, forum-selection clauses are valid and enforceable."); *see also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) ("A forum-selection clause is generally enforceable, and the burden of proof on a party challenging the validity of such a clause is heavy."); *Falbe v. Dell, Inc.*, No. 04-C-1425, 2004 WL 1588243, at *2 (N.D. Ill. July 14, 2004) (explaining that "Texas and Illinois have both adopted the Uniform Commercial Code" and therefore the same contract formation principles apply in each state).

### 2. The Validity of the Forum-selection Clause.

The central question in this case is whether Forby and One Technologies have entered into a valid agreement as expressed in the Terms and Conditions, including the forum-selection clause.[7] In order to have a valid contract, there must be offer, acceptance, and consideration. *E.g., All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 404 Ill. App. 438, 450, 934

---

[7] In order to be enforceable, the forum selection clause must also be mandatory, *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992), and the claims must fall within its scope, *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). One Technologies has established that the claims are within the scope of the forum selection clause. (Doc. 10 p.7). And the language of the agreement establishes that it is mandatory: "any arbitration, suit, action or other legal proceeding...*must* be brought in Dallas, Texas." (Doc. 10 Ex. B ¶ 22) (emphasis added). Forby does not contest either of these issues, so the Court will not consider them further.

N.E.2d 679 (1st Dist. 2010); *WPS, Inc. v. Expro Ams., LLC*, 369 S.W.3d 384, 399 (Tex. App. 2012). Under the Uniform Commercial Code as adopted by both Texas and Illinois, conduct by both parties which recognizes the existence of a contract is sufficient to show a valid agreement. Tex. Bus. & Com. Code Ann. § 2.204; 810 Ill. Comp. Stat. Ann. 5/2-204.

Here, as the parties have noted in their briefs, the issue is whether Forby assented to the Terms and Conditions offered by One Technologies. The parties primarily rely on three cases that deal with contract formation in the realm of Internet transactions: *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012); *Berkson v. Gogo LLC*, No. 14-cv-1850, 2015 WL 1600755 (E.D.N.Y. Apr. 9, 2015); and *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (5th Dist. 2005), *appeal denied* 844 N.E.2d 965 (Ill. 2006).

## A. Fteja v. Facebook

In *Fteja*, Judge Holwell in the Southern District of New York found that a "forum-selection clause contained in the terms and conditions that govern Facebook users' accounts" was valid. *Fteja*, 841 F. Supp. 2d at 834. Facebook's sign-up process was such that, in order to obtain an account, a putative user was required to click a "Sign Up" button directly below which was the following sentence: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service." *Id.* at 835. The phrase "Terms of Service" was underlined and hyperlinked. *Id.*

The *Fteja* court considered two different types of online agreements. The first, "browsewrap" agreements, typically involve no outward manifestation of assent but state that by simply visiting the website the user agrees to terms which are available only by clicking a hyperlink. *Id.* at 836. Courts typically only uphold "browsewrap" agreements if the user had actual or constructive knowledge of the agreement. *Id.* The second, "clickwrap" agreements, require a user to affirmatively click a box acknowledging agreement to the terms presented to them before using the website. *Id.* at 837. As such, courts have been more willing to enforce these agreements. *Id.*

The court found that Facebook's sign-up was neither a true browsewrap agreement nor a true clickwrap agreement. *Id.* at 838. Like a browsewrap agreement, the terms were only visible via a hyperlink and users were not forced to actually examine the terms before assenting, but like a clickwrap agreement, the user had to take an affirmative action—clicking "Sign Up"—to assent to the hyperlinked terms. *Id.*

The *Fteja* court determined that Facebook's agreement was comparable to cruise ticket cases in which courts upheld notices on the face of cruise tickets that notified customers that the ticket was subject to terms contained elsewhere on the ticket or contract. *Id.* at 839 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d

Cir. 1995)). The court reasoned that "at least for those to whom the internet is in an indispensable part of daily life, clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket." *Id.* Here, since "Fteja was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences," the court held that this was sufficient to find a valid agreement. *Id.* at 840.

### B. Berkson v. Gogo

In *Berkson*, however, Judge Weinstein in the Eastern District of New York found that a consumer of Gogo's in-flight wireless internet service was not bound by Gogo's terms of use. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 367 (E.D.N.Y. 2015). Similar to the agreement in *Fteja*, the court considered a "hybrid version[]" of a "browsewrap" and "clickwrap" agreement, which the court termed a "sign-in-wrap" agreement. *Id.* at 366.

The *Berkson* case deals with two versions of Gogo's sign-in portal; the second is more applicable here. On the "Sign-In" page, the website contained the language "By clicking 'Sign In' I agree to the terms of use and privacy policy" directly above a "Sign-In" button that putative users could click to access Gogo's internet service. *Id.* at 374.[8] "Terms of use" and "privacy policy" were underlined and hyperlinked. *Id.* Similarly, on the "Create Account" page, directly above a "Next" button, was the language "By

---

[8] Oddly, the Sign-In page contained a second "Sign-In" button which sat in the upper right-hand corner of the same page and had no language regarding the terms of use in close proximity to it. *Id.*

clicking 'NEXT' I agree to the terms of use and privacy policy." *Id.* at 375.
Again, "terms of use" and "privacy policy" were underlined and hyperlinked.
*Id.*

The *Berkson* court examined sociological and anecdotal evidence to
make "assumptions about internet consumers," and found that "there is a
difference between paper and electronic contracting" and that internet
consumers "require clearer notice than do traditional retail buyers."[9] *Id.* at
382. The court places the burden "on the offeror to impress upon the
offeree—i.e., the average internet user—the importance of the details of the
binding contract being entered into." *Id.*

The court looked at cases, including *Fteja*, and identified three
circumstances under which courts have upheld sign-in-wrap agreements:
(1) "where the hyperlinked 'terms and conditions' is next to the only button
that will allow the user to continue use of the website;"[10] (2) "where the user
'signed up' to the website with a clickwrap agreement and was presented
with hyperlinks to the 'terms of use' on subsequent visits;"[11] and (3) "where
notice of the hyperlinked 'terms and conditions' is present on multiple

---

[9] *But see Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir.2004)
("While new commerce on the Internet has exposed courts to many new situations,
it has not fundamentally changed the principles of contract."); *Treiber & Straub,
Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) (same); *Nguyen v. Barnes &
Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (same).

[10] *Berkson* cites *Crawford v. Beachbody*, LLC, No. 14–CV–1583, 2014 WL
6606563 (S.D.Cal. Nov. 5, 2014); *Starke v. Gilt Groupe, Inc.*, No. 13–CV–5497,
2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014); *Swift v. Zynga Game Network, Inc.*,
805 F.Supp.2d 904, 908, 912 (N.D.Cal.2011).

[11] *Berkson* cites *Nicosia v. Amazon.com, Inc.*, 84 F.Supp.3d 142 (E.D.N.Y. Feb. 4,
2015), *appeal filed*, No. 15–CV–0423 (2d Cir. Feb. 13, 2015); *Zaltz v. JDATE*,
952 F.Supp.2d 439, 454 (E.D.N.Y. 2013).

successive webpages of the site."[12] *Id.* at 401. Thus, the court found that these agreements will not be enforced "where the link to a website's terms is buried at the bottom of a webpage or tucked away in obscure corners of the website where users are unlikely to see it," but will be enforced "when a user is encouraged by the design and content of the website and the agreement's webpage to examine the terms clearly available through hyperlinkage." *Id.* at 401–02.

The *Berkson* court ultimately disagreed with *Fteja* and found significant differences between the sign-in-wrap and the hardcopy cruise ticket. *Id.* at 403 (citing *Carnival Cruise*, 499 U.S. at 587). Specifically, this was not an in-person transaction, Gogo did not email or mail the contents of the terms of use to its customers, and Gogo "did not make an effort to draw Berkson's attention to its 'terms of use' such as by using all caps or using the words 'contract' or 'important' or the phrase 'please read.'" *Id.*

The *Berkson* court found that the "design and content of the website …did not make the 'terms of use' readily and obviously available to Berkson" since the hyperlink "was not in large font, all caps, or in bold," "[n]or was it accessible from multiple locations on the webpage." *Id.* at 404. Moreover, the importance of the terms "was obscured by the physical manifestation of assent, in this case clicking the "SIGN IN" button." *Id.* Therefore the court found that the contract was not binding on Berkson.

---

[12] *Berkson* cites *Major v. McCallister*, 302 S.W.3d 227 (Mo. Ct. App. S. Dist. 2009).

### C. <u>Hubbert v. Dell</u>

The third case the parties rely on is *Hubbert v. Dell Corporation*, in which Justice Hopkins for the Appellate Court of Illinois, Fifth District, held that a purchaser of a Dell computer online was bound by an arbitration clause contained in Dell's "Terms and Conditions of Sale" that were accessible via hyperlinks during the ordering process. *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984, 835 N.E.2d 113, 121 (2005). A purchaser had to complete online forms on five webpages, each of which had a blue hyperlink to the "Terms and Conditions of Sale." *Id.* at 979. The last three webpages contained a statement that "All sales are subject to Dell's Term[s] and Conditions of Sale." *Id.* Dell never required purchasers to click an "I Accept" box to manifest assent to the agreement. *Id.* at 983.

The *Hubbert* court found that the blue hyperlinks on each page of the five-step process "should be treated the same as a multipage written paper contract," where the "hyperlink simply takes a person to another page of the contract, similar to turning the page of a written paper contract." *Id.* at 984. The court notes that "[a] person using a computer quickly learns that more information is available by clicking on a blue hyperlink." *Id.* The court held that these five hyperlinks, combined with "the statement that the sales were subject to the defendant's 'Terms and Conditions of Sale'" constituted sufficient notice to prospective buyers that they would be bound by these terms if they completed a purchase. *Id.*

### D. <u>One Technologies' Website</u>

As with the agreements in *Fteja* and *Berkson*, here the agreement is best characterized as a "sign-in-wrap" agreement, which is a sort of hybrid between a browsewrap and a clickwrap agreement. The prospective consumer must click through five different webpages, each of which contains a hyperlink to the "Terms and Conditions" (the first one is in grey font, the other four are blue). On the Step 2 Webpage, after the prospective customer enters their Social Security number and date of birth, the customer must click a "Continue" button in order to proceed through the purchase process. Directly above the "Continue" button is the following phrase: "By clicking on the 'Continue' button below, you agree to…the <u>Terms and Conditions</u>…." (Doc. 10 Ex. A). The underlined "Terms and Conditions" in that phrase is a sixth hyperlink to the terms.

The first page of the Terms and Conditions contract contains the bolded phrase "**This is a Binding Agreement**" and in all caps states "PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY." (Doc. 10 Ex. B). The sixth page of the terms contains the forum-selection clause (in normal font) and arbitration clause (in all caps).

Since this sign-in-wrap agreement is somewhere between a browsewrap and clickwrap agreement, it is unquestionably valid if it can meet the more stringent test for browsewrap agreements. "[A]bsent a showing of actual knowledge of the terms by the webpage user, the validity

of a browsewrap contract hinges on whether the website provided reasonable notice of the terms of the contract." *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (Castillo, J.). Forby contends that she did not have actual knowledge of these terms, and One Technologies does not appear to contest that assertion. Therefore, the question is whether One Technologies' website and sign-up process provided reasonable notice to Forby that she would be bound to the Terms and Conditions. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("Whether a user has inquiry notice of a browsewrap agreement…depends on the design and content of the website and the agreement's webpage."); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) ("Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility.").[13]

The Court finds that One Technologies' website and sign-up process provided sufficient notice to consumers that, by completing the sign-up process, they would be bound by One Technologies' Terms and Conditions. The hyperlink to the Terms and Conditions is on every single webpage a

---

[13] *See also PNC Bank, Nat. Ass'n v. Nordwall*, 499 B.R. 599, 607 (C.D. Ill. 2013) ("Inquiry notice charges a purchaser with knowledge of facts that he might have discovered by diligent inquiry.") (applying Illinois law); *Bank One, Texas, N.A. v. Little*, 978 S.W.2d 272, 279 (Tex. App. 1998) (finding that signing a letter of credit was "enough to have constructive or inquiry notice of the terms of the letter of credit").

prospective customer must fill out in order to complete the sign-up process.
*See Hubbert*, 359 Ill. App. 3d at 984; *see also Berkson*, 97 F. Supp. 3d at
401 (explaining that courts have upheld sign-in-wrap agreements "where
notice of the hyperlinked 'terms and conditions' is present on multiple
successive webpages of the site"). Except for the first page, these hyperlinks
are underlined and presented in blue font, contrasting a grey background.
*See E.K.D. ex rel. Dawes v. Facebook, Inc.,* 885 F. Supp. 2d 894, 901
(S.D. Ill. 2012) (Murphy, J.) (upholding forum-selection clause contained in
terms accessible via hyperlinks on every page on facebook.com in
underlined, blue text that contrasts with the white background); *PDC Labs.,
Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25,
2009) (Mihm, J.) (finding the underlined, blue contrasting text of
hyperlinks sufficiently conspicuous). The majority of the hyperlinks are
directly below the button on each page that the prospective customer must
click in order to proceed with the sign-up process. *See Berkson*, 97 F.
Supp. 3d at 401 (sign-in-wraps upheld when the hyperlinked terms are
"next to the only button that will allow the user to continue use of the
website").

Moreover, the hyperlink on the Step 2 Webpage is contained within
text directly above the "Continue" button that a user must press in order to
continue the sign-up process. *See Zaltz v. JDATE*, 952 F. Supp. 2d 439,
453-54 (E.D.N.Y. 2013) (where terms are referenced above rather than

below the button that must be clicked, this makes it "even more clear that prospective [customers] are aware that by clicking the button to move forward...they manifest their assent to the Terms"). This hyperlink is contained within a statement that informs the prospective purchaser that by clicking on the "Continue" button, she is agreeing to the Terms and Conditions. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 & n.1 (9th Cir. 2014) (explaining that although "proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice," where "the websites at issue have also included something more to capture the user's attention," such as a text warning, courts have enforced such agreements).

Therefore, this Court finds that, like *Fteja*, here Forby "was informed of the consequences of [her] assenting click and [s]he was shown, immediately [above], where to click to understand those consequences."[14] *Fteja*, 841 F. Supp. 2d at 840. Forby had ample notice and access to One Technologies' Terms and Conditions via numerous hyperlinks and manifested her assent to those terms by clicking the "Continue" button, regardless whether she actually read them or not. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) ("A contract need not be read to

---

[14] The Court received no information about Forby's level of sophistication with regards to using the internet. But the Court infers that one who can navigate through the five webpages of One Technologies' sign-up process and complete the text boxes, drop-down boxes, and radio button questions required to complete the sign-up has used a computer enough to "learn[] that more information is available by clicking on a blue hyperlink." *Hubbert*, 359 Ill. App. at 984.

be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."). The forum-selection clause is therefore part of a valid, binding contract between Forby and One Technologies.

### 3. Whether the Forum-selection Clause is Fundamentally Fair.

Forby also argues that the forum-selection clause is fundamentally unfair and therefore should not be enforced. The Supreme Court has held that "forum-selection clauses contained in form…contracts are subject to judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 1528, 113 L. Ed. 2d 622 (1991); *see also Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 203 (Tex. App. 2001) (the test is reasonableness as determined by whether enforcement of the forum-selection clause would be fundamentally unfair).

Forby argues that a bad faith motive is present because One Technologies "conduct[s] transactions all over the United States, but seek[s] to confine litigation to Dallas, Texas." (Doc. 24 p.14). This argument is contrary to Supreme Court's reasoning in *Carnival Cruise Lines.* There, the Court explained that "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit" since it "typically carries passengers from many locales" and therefore could be subject "to litigation in several different fora." *Carnival Cruise Lines, Inc*, 499 U.S. at 593. Similarly, internet-centric companies such as One Technologies do

business with people from all over the country and world, and thus have a legitimate interest in limiting the fora in which they can be sued.

Also, as in *Carnival Cruise Lines*, here "there is no indication that petitioner set [Texas] as the forum in which disputes were to be resolved as a means of discouraging [customers] from pursuing legitimate claims." *Id.* at 595. Like Carnival, One Technologies has its principal place in the forum it selected: Dallas, Texas. (Doc. 1 Ex. B ¶ 4). Therefore, there is no evidence of a bad faith motive here to support a conclusion that the forum-selection clause is fundamentally unfair.

Forby also argues that because the Terms and Conditions preclude class litigation or arbitration, they deprive Forby of an effective method of pursuing her claims. This argument fails as well. The Seventh Circuit has held that "[w]hatever may be said pro and con about the cost and efficacy of arbitration . . . is for Congress and the contracting parties to consider." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1151 (7th Cir. 1997). And the Supreme Court has held that the Federal Arbitration Act, 9 U.S.C. § 2, prohibits "conditioning the enforceability of…arbitration agreements on the availability of classwide arbitration procedures." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011). Therefore, the mere fact that the Terms and Conditions preclude class litigation and mandate individual arbitration is not sufficient evidence of fundamental unfairness. *See Kinkel v. Cingular Wireless LLC*, 223 Ill.

2d 1, 26, 857 N.E.2d 250, 266 (2006) (holding that contracts of adhesion that include arbitration clauses and class action waivers "are a fact of modern life" and thus "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable").

A party seeking to invalidate a forum-selection clause bears the "heavy burden of showing" that the contracted-for forum "will be so manifestly and gravely inconvenient" that the party "will be effectively deprived of a meaningful day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19, 92 S. Ct. 1907, 1918, 32 L. Ed. 2d 513 (1972); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1291 (7th Cir. 1989). The forum-selection clause in One Technologies' Terms and Conditions is "not unclear, in illegible print, in Sanskrit or hieroglyphics, or otherwise suggestive of fraudulent intent." *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 443 (7th Cir. 2012). Nor is there evidence that One Technologies selected Dallas, Texas as a forum "to make it difficult for the plaintiffs to enforce their rights under the contracts." *Id.* Therefore, Forby has not met her burden to show that the forum-selection clause is fundamentally unfair.[15]

---

[15] The Court notes that Forby does not address any "public-interest factors" that would preclude enforcement of this otherwise valid forum-selection clause. *See Atl. Marine*, 134 S. Ct. at 582. The Court does not find any public interest concerns sufficient enough to override the parties' choice of forum.

### *4. Transfer or Dismissal.*

Having found that a valid and enforceable forum-selection clause exists, this Court will transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The Court observes that the forum-selection clause is ambiguous as to whether it points to a federal or state forum, as it simply states that claims "must be brought in Dallas, Texas." (Doc. 10 Ex. A ¶ 22). As such, it is unclear from the face of the agreement whether a 1404(a) transfer or a *forum non conveniens* dismissal is the more appropriate course. *See Atlantic Marine*, 134 S. Ct. at 579–80. One Technologies argues that dismissal under the *forum non conveniens* doctrine is proper because the "district court cannot compel arbitration outside the confines of its district." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("[W]here the arbitration agreement contains a forum-selection clause, only the district court in that forum can issue a § 4 order compelling arbitration.").

The Seventh Circuit "has not had occasion to address *Atlantic Marine* in light of arbitration forum-selection clauses governed by the Federal Arbitration Act." *Bahoor v. Varonis Sys., Inc.*, ___ F.Supp.3d ___, No. 15 C 5490, 2015 WL 9460573, at *3 n.3 (N.D. Ill. Dec. 28, 2015) (Chang, J.). Though One Technologies' seeks dismissal rather than transfer, that is not the rule in this circuit. *Mostly Memories, Inc. v. For*

*Your Ease Only, Inc.*, 526 F.3d 1093, 1098 (7th Cir.2008). This Court finds that dismissing the case under the *forum non conveniens* doctrine would in essence be requiring Forby to either (1) refile in federal or state court in Dallas, Texas; or (2) concede to arbitration in Dallas, Texas. The first option is contrary to the notions of judicial economy and convenience to the parties: why require Forby to refile when the Court can properly transfer the case? The second option is contrary to the Seventh Circuit's ruling that this Court cannot compel arbitration outside of its district. Therefore, the Court finds that transfer pursuant to 1404(a) is the more appropriate course in this case.

**V.    Conclusion**

Accordingly, the Court **GRANTS** One Technologies' Motion to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and **DENIES AS MOOT** One Technologies' requests to dismiss the case pursuant to the doctrine of *forum non conveniens* or Rule 12(b)(6).

**IT IS SO ORDERED.**

Signed this 25th day of March, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.03.25 15:34:28 -05'00'

**United States District Judge**